IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE MENTOR CORP. OBTAPE | * | MDL Docket No. 2004 |
| | | 4:08-MD-2004 (CDL) |
| TRANSOBTURATOR SLING PRODUCTS | * | |
| | | Case No. |
| LIABILITY LITIGATION | * | 4:11-cv-5074 (K. Curtis) |

O R D E R

Defendant Mentor Worldwide LLC ("Mentor") developed a suburethral sling product called ObTape Transobturator Tape ("ObTape"), which was used to treat women with stress urinary incontinence. Plaintiff Kimberly Curtis ("Mrs. Curtis") was implanted with ObTape, and she asserts that she suffered injuries caused by ObTape. Mrs. Curtis brought this product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Mrs. Curtis also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mrs. Curtis's husband, Thomas Curtis ("Mr. Curtis") asserts a derivative claim for loss of consortium. Mentor contends that the Curtises' claims are barred by the applicable statutes of limitation. For the reasons set forth below, the Court agrees and Mentor's Motion for Summary Judgment (ECF No. 45 in 4:11-cv-5074) is granted. Mentor's Motion to Exclude the

Expert Testimony of Larry W. Rumans, M.D. (ECF No. 44 in 4:11-cv-5074) is now moot.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Mr. and Mrs. Curtis, the record reveals the following. Unless otherwise noted, the facts are undisputed for purposes of Mentor's summary judgment motion.

Mr. and Mrs. Curtis are currently residents of North Carolina, but they previously lived in Illinois, and the majority of Mrs. Curtis's relevant medical care occurred in Illinois. In 2004, Mrs. Curtis visited Dr. Brett Trockman, a

urologist, because she was experiencing problems with incontinence. Dr. Trockman initially prescribed medication to treat Mrs. Curtis's symptoms, but the medication did not help. After discussing her options with Dr. Trockman, Mrs. Curtis decided to undergo a transobturator sling procedure. Dr. Trockman implanted ObTape in Mrs. Curtis on February 8, 2005. In August of 2005, Mr. Curtis told Mrs. Curtis that he noticed some exposed ObTape in her vagina. Mrs. Curtis went to Dr. Trockman, who diagnosed an erosion and told Mrs. Curtis that the erosion would need to be surgically corrected. At the time, Mrs. Curtis was under the impression that erosion was not a common occurrence with ObTape, but she did wonder why it happened. According to Mrs. Curtis, Dr. Trockman "didn't seem to really understand why it happened." K. Curtis Dep. 129:3-7, ECF No. 45-5. Dr. Trockman excised the exposed portion of Mrs. Curtis's ObTape.

Several months later, Mrs. Curtis began experiencing fevers and sores while she was in New York for business. Mrs. Curtis went to the emergency room and was diagnosed with a severe infection. At that point, Mrs. Curtis "knew [she] was sick and [she] was sick because of this stuff, this mesh." *Id.* at 148:20-22. Mrs. Curtis returned home to Illinois and visited Dr. Trockman, who told Mrs. Curtis that her body was rejecting the ObTape for some reason, but he did not know why. *Id.* at

148:22-25.  Dr. Trockman performed a second excision surgery on March 18, 2006.  Mrs. Curtis asserts that neither Dr. Trockman nor another doctor told her that the ObTape was defective, and she did not suspect that ObTape might be defective until she saw a television ad regarding ObTape complications in 2010.

The Curtises filed this action on October 5, 2011.  *See generally* Compl., ECF No. 1 in 4:11-cv-5074.  Mrs. Curtis brought claims under both tort and contract theories.  Her tort theories are negligence, strict liability/defective design, strict liability/manufacturing defect, strict liability/failure to warn, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation.  Mrs. Curtis's contract theories are breach of implied warranties and breach of express warranties.  Mr. Curtis's claims are based on a loss of consortium theory.

## DISCUSSION

The Judicial Panel on Multidistrict Litigation transferred the Curtises' diversity action from the United States District Court for the Northern District of Illinois to this Court for pretrial proceedings.  Therefore, the Court must apply the choice-of-law rules of Illinois, the transferor forum, to determine which state law controls.  *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010); *see also Murphy v. Fed. Deposit Ins. Corp.*, 208 F.3d 959, 965 (11th Cir. 2000)

("Our system contemplates differences between different states' laws; thus a multidistrict judge asked to apply divergent state positions on a point of law would face a coherent, if sometimes difficult, task.") (internal quotation marks omitted).

In this case, the Curtises' injuries occurred in Illinois, and Illinois is the forum where they brought their action. Therefore, the Curtises and Mentor agree that Illinois's statutes of limitation apply to the Curtises' claims. *See Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 904-09 (Ill. 2007) (explaining Illinois choice-of-law analysis and noting that the law of the state where the injury occurred usually applies unless another state has a more significant relationship to the dispute). Neither side has suggested that another state's law applies, and the Court will therefore apply Illinois law and determine whether the Curtises' claims are barred under the Illinois statutes of limitation.

The parties agree that Mrs. Curtis's tort claims and Mr. Curtis's loss of consortium claims are subject to a two-year statute of limitations. *See* 735 Ill. Comp. Stat. 5/13-202 (personal injury); *id.* § 5/13-203 (loss of consortium-injury to person). The parties also agree that Mrs. Curtis's breach of warranty claims are subject to a four-year statute of limitations. *See* 810 Ill. Comp. Stat. 5/2-725(1)-(2). The only

5

dispute between the parties relates to when the Curtises' claims accrued.

## I.   Tort Claims

Under Illinois law, the statute of limitations for personal injury actions is two years after the cause of action accrues. 735 Ill. Comp. Stat. 5/13-202.  A loss of consortium claim must "be commenced within the same period of time as actions for damages for injury to such other person." *Id.* § 5-13-203. Under Illinois law, a personal injury cause of action accrues when the "plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Castello v. Kalis*, 816 N.E.2d 782, 788 (Ill. App. Ct. 2004) (internal quotation marks omitted).  "The phrase 'wrongfully caused' does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action." *Id.* at 789 (internal quotation marks omitted). "Rather, the term refers to when an injured party becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Id.* (internal quotation marks omitted).  The Illinois Supreme Court emphasized that this rule "is not the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury and the defendants' negligent conduct.  Not only

is such a standard beyond the comprehension of the ordinary lay
person to recognize, but it assumes a conclusion which must
properly await legal determination." *Nolan v. Johns-Manville
Asbestos*, 421 N.E.2d 864, 868 (Ill. 1981). When a plaintiff
"knows or reasonably should know both of his injury and that it
was wrongfully caused, the burden is upon the injured person to
inquire further as to the existence of a cause of action."
*Castello*, 816 N.E.2d at 789 (internal quotation marks omitted);
*accord Nelson v. Jain*, 526 F. Supp. 1154, 1157 (N.D. Ill. 1981)
(noting that a plaintiff may not make herself an "ostrich . . .
blinding [herself] to the obvious inferences from plain facts").

In *Aspergren v. Howmedica, Inc.*, 472 N.E.2d 822 (Ill. App.
Ct. 1984), for example, the plaintiff asserted a product
liability claim against the manufacturer of her hip implant
after the implant became fractured. The Illinois Appellate
Court found that a fact question existed on the question of when
the plaintiff's claim accrued, but the court suggested that it
accrued, at the latest, when the implant was removed and the
plaintiff had an "opportunity to examine the fractured implant
and determine the cause of its failure." *Id.* at 824; *see also
Mele v. Howmedica, Inc.*, 808 N.E.2d 1026, 1035-36 (Ill. App. Ct.
2004) (finding that product liability cause of action related to
medical device used in hip replacement surgery accrued when the
plaintiff's doctor suggested removing the device because it

could be causing the plaintiff's pain), *overruled on other grounds by Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 258-59 (Ill. 2007); *cf. Berry v. G.D. Searle & Co.*, 309 N.E.2d 550, 557 (Ill. 1974) (finding that the plaintiff's product liability action accrued when she suffered a stroke, not when she later discovered that her birth control pills might be connected to the stroke).

Mrs. Curtis argues that her tort causes of action against Mentor did not accrue until she knew of her injury, knew the injury was caused by ObTape, *and* knew that ObTape might be defective. Mrs. Curtis, however, pointed the Court to no Illinois authority that supports such a rule. Rather, the Illinois Supreme Court has emphasized that the Illinois discovery rule "is not the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury and the defendants' negligent conduct." *Nolan*, 421 N.E.2d at 868. Here, Mrs. Curtis knew by March of 2006 that her body was rejecting the ObTape and that she had suffered a severe infection as a result. *See* K. Curtis Dep. 148:20-22 ("I just knew I was sick and I was sick because of this stuff, this mesh."). At that time, Mrs. Curtis had sufficient notice that her injuries were related to ObTape so that she could begin an investigation to determine whether those injuries were caused by a problem with ObTape, a problem with the implantation surgery,

or some other problem.  For these reasons, the Court finds that no genuine fact dispute exists as to when Mrs. Curtis's tort claims accrued.  Her tort claims accrued in March of 2006 at the latest.  Mrs. Curtis did not file her Complaint until October 5, 2011—more than two years after her cause of action accrued. Therefore, her tort claims are barred by the applicable statute of limitations.  Mr. Curtis's loss of consortium claims are likewise barred.  Mentor is entitled to summary judgment on these claims.[1]

## II.  Breach of Warranty Claims

Under Illinois law, a breach of warranty claim "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."  810 Ill. Comp. Stat. 5/2-725(2) [hereinafter § 2-725(2)]   "A breach of warranty occurs when tender of delivery is made."  *Id.*  "In other words, an express warranty obligates . . . the seller to deliver goods that conform to the affirmation, promise, description, sample or model. . . ."  *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1058 (Ill. 2007).  "If the seller delivers nonconforming goods, the warranty is breached at that time.  Even if the buyer

---

[1] To the extent that this holding may appear to be inconsistent with the Court's previous holding under Georgia law in *In re Mentor Corp. ObTape Transobturator Sling Products Liability Litigation,* 711 F. Supp. 2d 1348 (M.D. Ga. 2010), the Court finds that Illinois law has not been as broadly interpreted as the Eleventh Circuit seemed to interpret Georgia law in *Welch v. Celotex Corp.*, 951 F.2d 1235 (11th Cir. 1992).

is unaware that the goods, as delivered, do not conform to the seller's affirmation, promise, description, sample or model, the warranty has been breached." *Id.* There is a statutory "discovery rule" exception to this general rule: "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance[,] the cause of action accrues when the breach is or should have been discovered." § 2-725(2).

Mrs. Curtis, relying on a 1971 federal district court case, argues that the statute of limitations for warranty cases begins on the date the product's defect is discovered. *See Klondike Helicopters, Ltd. v. Fairchild Hiller Corp.*, 334 F. Supp. 890, 893 (N.D. Ill. 1971) ("It seems reasonable to expect a warranty of [merchantability] to continue beyond the tender of delivery and extend for the life of the product."). Illinois courts, however, have rejected this approach. Illinois courts have concluded that "[t]he mere expectation that a product's warranty extends for the life of the product does not delay the point at which the statute of limitations commences to run." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 454 (Ill. 1982). Though § 2-725(2) does provide a "discovery rule" for warranty cases, the discovery rule only applies "where a warranty explicitly extends to future performance," and the statute's "'except' clause has been narrowly construed, with emphasis on

'explicitly.'" *Nelligan v. Tom Chaney Motors, Inc.*, 479 N.E.2d 439, 442 (Ill. App. Ct. 1985) (internal quotation marks omitted). Therefore, the discovery rule exception of § 2-725(2) does not apply in implied warranty cases. *Id.* The discovery rule of § 2-725(2) also does not apply in express warranty cases unless the warranty "explicitly" extends to future performance. *Moorman Mfg. Co.*, 435 N.E.2d at 454. A warranty that simply states what the product is designed to do—for example, a statement that a grain storage tank is "designed to withstand 60 lbs. per bushel grain and 100 m.p.h. winds"—is not an explicit warranty of future performance. *Id.* at 453-54. Rather, there must be some reference to future time in the warranty to trigger the discovery rule. *Ridle v. Sprayrite Mfg. Co.*, 555 N.E.2d 1272, 1274 (Ill. App. Ct. 1990).

Here, Mrs. Curtis did not point the Court to evidence of an express warranty for ObTape that explicitly extends to future performance. Therefore, the discovery rule of § 2-725(2) does not apply, and the breach of warranty occurred no later than the date Mrs. Curtis was implanted with ObTape—February 8, 2005. Mrs. Curtis filed this action more than four years later, on October 5, 2011, so her warranty claims are time-barred, and Mentor is entitled to summary judgment on these claims.

CONCLUSION

As discussed above, the Curtises' claims are time-barred, and Mentor's Motion for Summary Judgment (ECF No. 45 in 4:11-cv-5074) is granted.   Mentor's Motion to Exclude the Expert Testimony of Larry W. Rumans, M.D. (ECF No. 44 in 4:11-cv-5074) is now moot.


IT IS SO ORDERED, this 11th day of February, 2013.

S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE